**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**FAYETTEVILLE DIVISION**

ADRIANA HERNANDEZ                                                    **PLAINTIFF**

**V.**                                    **CASE NO. 5:19-CV-05091**

**KEVIN K. McALEENAN**, Acting Secretary
of The Department of Homeland Security, et al                        **DEFENDANTS**

<u>**OPINION AND ORDER**</u>

Currently before the Court is the Report and Recommendation ("R&R") (Doc. 11)

filed on October 8, 2019, by the Honorable Erin L. Wiedemann, United States Magistrate

Judge for the Western District of Arkansas, regarding the Motion to Dismiss (Doc. 6) filed

by Defendants Kevin K. McAleenan, Acting Secretary of the Department of Homeland

Security ("DHS"); L. Francis Cissna, Director of the U.S. Citizenship & Immigration

Services ("USCIS"); Cindy Gomez, District Director, USCIS, New Orleans District;

Christina Olguin, Field Office Director, USCIS, Fort Smith Field Office; DHS; and USCIS

(collectively, "Defendants"). The R&R recommends that the Court grant in part and deny

in part Defendants' Motion.

Defendants filed Objections to the R&R (Doc. 14) on October 29, 2019. Pursuant

to 28 U.S.C. § 636(b)(1), the Court has reviewed the record *de novo* as to all specified

proposed findings and recommendations to which Defendants have raised objections and

finds that the objections offer neither law nor fact to warrant deviating from the R&R.

Accordingly, the R&R is **ADOPTED IN ITS ENTIRETY**. Below, the Court will address

Defendants' Objections, beginning with a brief review of the facts presented by this case.

The Magistrate Judge amply laid out the background facts in the R&R, and there

is no need to restate them in full here. In short, Plaintiff applied for permanent resident

status pursuant to 8 U.S.C. § 1255(i), and USCIS approved her status change despite Plaintiff's failure to include the required supplemental form and $1,000.00 fee and Defendants' failure to give her notice of such deficiencies. Nearly eleven years later, Plaintiff filed an application for naturalization, which USCIS denied contending that, due to the shortcomings in Plaintiff's application for permanent residence, she was "not lawfully admitted for permanent residence . . . ." (Doc. 6-1, pp. 2–3). Plaintiff appealed this denial, and USCIS affirmed its decision. She subsequently filed the present suit on May 10, 2019, requesting that the Court conduct a *de novo* review of her application for naturalization pursuant to 8 U.S.C. § 1421(c) of the Immigration and Nationality Act ("INA") and/or set aside the denial of her application pursuant to the Administrative Procedures Act ("APA").

In the R&R, the Magistrate Judge recommends that Plaintiff's APA claim be dismissed, as 8 U.S.C. § 1421(c) provides an adequate remedy for Plaintiff's complaint, and the APA would only permit judicial review in the absence of another adequate remedy. As neither party objected to this recommendation, the APA claim will be dismissed without prejudice. As for Plaintiff's INA claim, the Magistrate Judge recommended denying the motion to dismiss and allowing the claim to proceed. Defendants object to this recommendation on the following two grounds: (1) Supreme Court precedent requires "strict compliance with all of the congressionally imposed prerequisites to the acquisition of citizenship," and the R&R thus "created an impermissible equitable remedy" for Plaintiff; and (2) the R&R "follows case law that has not been followed by any other court for its holding, is distinguishable, and is not binding on this Court." (Doc. 14, p. 2).

Under the INA, an individual is eligible for naturalization once she is lawfully admitted for permanent residence "in accordance with all applicable provisions" therein. 8 U.S.C. § 1429. "'[L]awfully admitted for permanent residence' means the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws . . . ." 8 U.S.C. § 1101(a)(20). The Attorney General may adjust "[t]he status of an alien who was inspected and admitted or paroled into the United States . . . to that of an alien lawfully admitted for permanent residence" if such individual meets certain qualifications. 8 U.S.C. § 1255(a). Typically, an alien who "has failed . . . to maintain continuously a lawful status since entry into the United States" may not be lawfully admitted for permanent residence. 8 U.S.C. § 1255(c)(2).

At the time Plaintiff made her application for permanent residency, she was ineligible under 8 U.S.C. § 1255(a) because her visa had expired. However, 8 U.S.C. § 1255(i) provides that an alien who overstays her visa and is the beneficiary of a family-preference Form I-130 visa petition may apply to the Attorney General for a status adjustment to an alien lawfully admitted for permanent residence. 8 U.S.C. § 1255(i). To adjust status under § 1255(i), an applicant must attach a completed "Supplement A" to her standard application and pay a $1,000.00 fee. *Id.*; *see also* 8 C.F.R. § 245.10(b). If Supplement A and the $1,000.00 fee are not attached to the application, then the United States must notify the applicant in writing of its intent to deny the application and allow thirty days to supplement. *See* 8 C.F.R. § 245.10(d) (providing that an alien "will be allowed the opportunity to amend such an application . . . if it appears that the alien *is not otherwise ineligible for adjustment of status*") (emphasis added).

In the R&R, the Magistrate Judge saw "no merit to Defendant[s'] argument that Plaintiff is ineligible for naturalization because she cannot establish that she was lawfully admitted for permanent residence." (Doc. 11, p. 10). In reaching this decision, the Magistrate Judge relied on two district court cases: *Agarwal v. Napolitano*, 663 F. Supp. 2d 528 (W.D. Tex. 2009); and *Aliping v. Campagnolo*, 2018 WL 6421690 (C.D. Cal. Oct. 17, 2018).

In *Agarwal v. Napolitano*, the Western District of Texas held that "a rescission of [the plaintiffs' lawful permanent resident ("LPR")] status predicated upon a failure to pay the required § 1255(i) fee, when [USCIS] failed to provide the required notice," would provide an unjust and unlawful result. 663 F. Supp. 2d at 539. USCIS argued that the plaintiffs were ineligible for naturalization because of an erroneous grant of LPR status due entirely to their failure to pay the $1,000.00 fee. *Id.* at 537. Though the plaintiffs' failure to pay this fee was the linchpin of USCIS's argument, the agency could not show that it had provided the plaintiffs with the required deficiency notice. *Id.* at 538. The court reasoned that USCIS was obligated to give the plaintiffs the benefit of notice of nonpayment and allow them the opportunity to cure that shortcoming *while the LPR applications were still pending*. Since the agency failed to do these things, the court observed:

> Had the applications simply been denied in 1997 for failure to pay the §1255(i) enhanced fee, the [plaintiffs] could have unquestionably complained about a failure to provide the notice mandated by 8 C.F.R. § 245.10(d), and gained relief at that time. Should their position now be the worse because the agency erroneously *granted* the petitions in 1997? That result should not be permitted as it would essentially gut the notice provision by allowing the [USCIS] to grant and then immediately rescind LPR status without providing the required notice—the agency could do that in every case and be spared the burden of ever having to provide notice.

*Id.* (emphasis in original). The court then recognized that the only way to legally rescind LPR status, even if erroneously granted by USCIS, was through the formal procedure set forth in 8 C.F.R. § 246.1 and that "[s]imply ignoring LPR status after it is granted . . . is inappropriate." *Id.* at 539. Thus, the *Agarwal* court ultimately vacated USCIS's denial of the plaintiffs' naturalization applications, finding that the agency's decision to retroactively cut off the plaintiffs' LPR status for failure to pay a fee that USCIS never demanded was contrary to law. *Id.* at 538.

The second decision relied on by the Magistrate Judge is *Aliping v. Campagnolo*. In that case, the Central District of California held that the plaintiff was lawfully admitted for permanent residence because she was capable of meeting the substantive prerequisites for naturalization when USCIS granted her LPR status—despite the fact that she failed to include the $1,000.00 fee with her application. 2018 WL 6421690, at *5. USCIS argued that this nonpayment of the fee made the plaintiff statutorily ineligible for naturalization because she was not lawfully admitted for permanent residence in the first place. *Id.* at *2. In furtherance of that argument, USCIS relied on *Segura v. Holder*, 605 F.3d 1063, 1066 (9th Cir. 2010), which held that "[a]lthough an alien may have been admitted for permanent residence, he has not been *lawfully* admitted for permanent residence if he was precluded from obtaining permanent resident status due to an inability to meet the prerequisites." (emphasis in original).

The *Aliping* court considered the Ninth Circuit's decision in *Segura* and distinguished it from the facts before it as follows:

> [T]he Court declines to extend *Segura* and its progeny to the present facts. In each of those cases, the government granted LPR status to an applicant despite the applicant's substantive ineligibility due to either a conviction (*Segura*), misrepresentation of marital status (*Zuniga*), misrepresentation

on an underlying asylum petition (*Bertos*), or revocation of a sponsoring parent's petition for LPR (*Ayala*). ***The moment the paperwork landed on the USCIS desk, each of those applicants was "precluded from obtaining permanent resident status due to an inability to meet the prerequisites." In each case, the applicant should not have received LPR status in the first place***, and the reviewing court determined that the government's initial error should not be compounded by allowing substantively undeserved LPR status to undergird a separate application for a change in status . . . .

Defendant attempts to sidestep *Segura* by arguing that the $1,000 payment with an underlying application for adjustment of a status is a *substantive* statutory requirement. Hence, according to the government, anyone whose LPR status was granted despite nonpayment is *substantively* not "lawfully admitted for permanent residence" under a *Segura* construction of 8 U.S.C. § 1429. Defendant thereby asks the Court to put such nonpayment on the same plane as criminal conviction, misrepresentation of facts or cancellation of the underlying basis for lawful admission. That mere nonpayment of a fee should have the same effect as immutable ineligibility—and should haunt Plaintiff in every inquiry of legal compliance *ad infinitum*—is a dubious claim.

*Aliping*, 2018 WL 6421690, at *3–4 (emphasis added) (internal citations omitted).

Under Eighth Circuit law, the term "lawfully" "denotes compliance with substantive legal requirements, not mere procedural regularity" and applies to situations where an alien received an adjustment in status by either fraud or mistake. *See Arellano-Garcia v. Gonzales*, 429 F.3d 1183, 1186 (8th Cir. 2005) (noting that this is the same interpretation articulated by the Fifth and Ninth Circuits). Defendants rely on *Arellano-Garcia v. Gonzales* in contending that Plaintiff was not lawfully admitted for permanent residence when her adjustment of status occurred due to a mistake by USCIS. However, that case involved a plaintiff who was *substantively* ineligible for a status adjustment due to a criminal conviction. *Id.* at 1187 ("We will not 'deem' [plaintiff] to be a 'lawfully admitted permanent resident' when he obtained permanent resident status through a mistake and *was not otherwise eligible for the status adjustment*.") (emphasis added).

The present case is distinguishable:  Plaintiff *was* otherwise substantively eligible to obtain her LPR status adjustment, albeit through a procedurally incomplete application. "Not otherwise eligible for the status adjustment" cannot be construed as including mere procedural missteps.  In fact, the notice provision in 8 C.F.R. § 245.10(d) permits an alien to amend her application and submit the requisite $1,000.00 fee if the "alien *is not otherwise ineligible for adjustment of status*."  Such language shows that the statute itself contemplates and differentiates substantive ineligibility from procedural irregularity and provides leave to amend applications in the latter situation.   In denying Plaintiff's naturalization application, Defendants have penalized Plaintiff for failing to comply with all applicable provisions of the INA when they themselves disregarded their statutory obligation to provide her with the required notice of nonpayment.  The *Aliping* court, which used the same definition of "lawfully" that has been articulated by the Eighth Circuit, recognized the unjustness of allowing USCIS to disregard the notice provision or equate "mere nonpayment of a fee" to "immutable ineligibility."  2018 WL 6421690, at *4.  As the court explained, "nonpayment [is not] on the same plane as criminal conviction, misrepresentation of facts or cancellation of the underlying basis for lawful admission. " *Id.*  This Court agrees with the reasoning in *Aliping* and *Agarwal* and finds that those courts interpreted the relevant provisions of the INA and enacting regulations in a manner consistent with Eighth Circuit precedent.

Defendants' last argument is that allowing this case to proceed further would require the Court to endorse an "impermissible equitable remedy" of granting citizenship, with courts generally lack the power to do.  To support the argument, they cite to *I.N.S. v. Pangilinan*, 486 U.S. 875, 883–85 (1988), where the Supreme Court reversed the Ninth

Circuit's decision to confer citizenship on a group of individuals—for equitable reasons—since the relevant special immigration statute that entitled these individuals to apply for and receive citizenship expired decades before. Here, the Court is not invoking its equitable powers in an attempt to grant citizenship. Instead, the Court is interpreting the INA and its enacting regulations in relation to the facts of this case—which it clearly has the power to do.

**IT IS THEREFORE ORDERED** that the Magistrate Judge's R&R (Doc. 11) is **APPROVED** and **ADOPTED IN ITS ENTIRETY**. Accordingly, Defendants' Motion to Dismiss (Doc. 6) is **GRANTED IN PART AND DENIED IN PART**. Specifically, the Motion is **DENIED** with regard to Plaintiff's claim under § 1421 of the INA. The Motion is **GRANTED** with regard to Plaintiff's claim for violation of the APA, and that claim is **DISMISSED WITHOUT PREJUDICE**. An initial scheduling order will issue shortly.

**IT IS FURTHER ORDERED** that Defendants file an answer by **December 6, 2019**.

**IT IS SO ORDERED** on this 25th day of November, 2019.


/s/ Timothy L. Brooks
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE